IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| KONO D. SMITH | : |
| Plaintiff, | : |
| | : Civil Action No. _____ |
| v. | : |
| GWINNETT COUNTY SCHOOL DISTRICT | : **JURY TRIAL DEMANDED** |
| Defendant. | : |

# COMPLAINT

COMES NOW Plaintiff Kono D. Smith ("Plaintiff" or "Smith"), by and through his undersigned counsel, and files this Complaint against Defendant Gwinnett County School District ("Defendant" or "GCSD") seeking recovery of damages and other appropriate relief for violations of Plaintiff's rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 et seq. for unlawful interference and retaliation.

## JURISDICTION AND VENUE

1. This Court has federal question jurisdiction over Plaintiff's FMLA claims pursuant to 28 U.S.C. § 1331.

2. Venue for this case lies with this Court pursuant to 29 U.S.C. § 1391 (b) and Local Rule 3.1(B)(3) because the unlawful employment practices described

herein occurred within the jurisdiction of this Court (and within the Atlanta Division of the Northern District of Georgia) and because Defendant is located in this District and is subject to personal jurisdiction in this District.

**PARTIES**

3. Plaintiff is a citizen of the United States of America and resident of Dacula, Georgia. At all times relevant to this Complaint, Plaintiff has resided within the Northern District of Georgia and he submits himself to the jurisdiction of this Court.

4. Defendant is a public school district organized under Georgia law and operating in Gwinnett County, Georgia that has the capacity to be sued.

5. At all times relevant hereto, Defendant was an "employer" covered by the FMLA.

6. Defendant may be served with process by service upon its Superintendent, Calvin Watts, at 437 Old Peachtree Road NW, Suwanee, Georgia 30024-2978.

7. Plaintiff is a former employee of Defendant and at the time of his termination was an "eligible employee" under the FMLA.

8. Plaintiff, at all times relevant hereto, had rights protected by the FMLA.

## FACTUAL ALLEGATIONS

9. Smith was employed by GCSD from August, 2013 until June, 2021.

10. Smith came to GCSD with approximately sixteen-plus years of experience as an educator. From 1997 to 2013, he was an elementary and high school educator with the Dougherty County (Georgia) School System, including service as an Assistant Principal and Interim Principal.

11. Smith's employment with GCSD was memorialized in a series of contracts of employment with the Gwinnett County Board of Education.

12. His initial contract was for the scholastic year 2013 to 2014 and was entered into on or about August 23, 2013.

13. That initial contract became the "standard annual contract" for Smith. A new contract, in the same or similar form, covered each new (or renewed) scholastic year of employment with GCSD.

14. From 2013 to 2019, Smith served as an Assistant Principal at Hopkins Elementary School.

15, Smith was then promoted to the position of Principal and assigned to Graves Elementary School in Norcross, where he began working in July, 2019.

16. Graves Elementary is part of the "Meadowcreek Cluster."

17. Prior to the 2020-2021 scholastic year, when the events giving rise to Smith's claims occurred, Smith's contract with GCSD had been renewed and/or extended six times.

18. Smith's contract for the 2020-2021 year (which he signed on June 25, 2020) noted the fact that he had "23 years of verified, approved experience."

19. Smith's performance as a GCSD employee was noted to be good before his assignment/promotion to Graves Elementary.

20. Smith's contract would not have been renewed six times if his performance had been poor.

21. Smith would not have been promoted from Assistant Principal to Principal if his performance had been poor.

22. Smith's predecessor at Graves Elementary, Clayborn Knight, had resigned for "personal reasons" in the Spring of 2019, with two days left in the 2018-2019 school year.

23. Smith was informed about misconduct by Knight and that he resigned after being made aware that he would otherwise be terminated for "misconduct." on school property."

24. The four Assistant Principals at Graves who had reported to Knight were apparently unaware of the circumstances leading up to Knight's departure.

25. Smith was directed to not discuss the circumstances of Knight's departure with the Assistant Principals when he started his job at Graves.

26. The Assistant Principals at Graves Elementary were cold and unwelcoming to Smith in their dealings with him. It was clear to Smith that they had an allegiance to Knight and, not knowing about the circumstances leading up to his departure, were upset about Knight's unexpected, unexplained exit.

27. Additional challenges for Smith (as for other educators and school administrators) would later be experienced beginning in March, 2020 with the onset of the Covid-19 pandemic.

28. Smith's performance as of January 22, 2020 was good and noted to be good.

29. The 2019-2020 Principal Assessment signed by Assistant Superintendent Donna Ledford on that date describes Smith as "highly engaged in the work at Groves," "visible in the community" and "committed to improving student performance at Graves Elementary."

30. As of mid-2020, Smith was noted to be "Proficient / L3" in all assessed

categories (Instructional Leadership, School Climate, Planning and Assessment, Organizational Management, Human Resources Management, Teacher/Staff Evaluation, Professionalism, and Communication and Community Relations).

31. In the Fall of 2020, Smith was trying to manage and deal with physical injuries in his right shoulder which he initially sustained in November, 2018, when he endured a rotator cuff tear and labrum tear in his right shoulder and other injuries.

32. This medical condition ultimately required Smith to undergo a surgery on November 20, 2020 which involved arthroscopic rotator cuff repair, SLAP repair, anterior/posterior capsulorrhaphy, and subacromial decompression.

33. Due to his serious medical condition, need for surgery, and the time required to recover from the surgery, Smith was required to be away from work for an extended period of time.

34. Before taking leave and on various occasions, Smith discussed his medical condition, need for medical leave, and upcoming absence from work with Assistant Superintendent Dr. Donna Ledford and other educators, administrators, and HR employees on numerous occasions.

35. Ledford knew that Smith had physical injuries in his shoulder, needed surgery, and was going to be out of work for an extended period.

36. Ledford made comments expressing disapproval of Smith's absence from work.

37. Before his subject FMLA leave in this matter, Smith completed and submitted to GCSD a request for leave of absence from 11/20/2020 to 2/22/2021 for "personal disability."

38. GCSD's Human Resources Leave Administration office responded on the section of the form reserved for the leave office by indicating that "Your leave request has been approved subject to Board ratification."

39. In connection with Smith's leave, the Leave Administration office also entered the following information and designations on the form (and into official HR records), which was signed off on by Benefits and Leave employee Carla Cubitt:

"Last Day Worked:        11/19/202
Leave Begin Date:        11/20/2020
Estimated RTW:           02/22/2021
Disability Begin Date:   11/20/2020
FMLA Elig:               Yes
Previous FMLA Used:      N/A
FMLA Begins:             11/20/2020
FMLA Ends :              02/26/2021"

40. A Leave of Absence Payroll Worksheet completed by Gwinnett County Public Schools Payroll Specialist Melissa McCullough and processed in connection with Smith's approved leave reflects (among other things) a "Last Day Worked" of 11/19/20 and an "Effective Date" of 11/20/20.

41. Smith's last day worked before taking leave was November 19, 2020 and he began his approved, FMLA-covered leave on November 20, 2020.

42. While Smith was on leave, Ledford initiated communications with him on multiple occasions.

43. In spite of knowing the dates of Smith's leave and having easy ways to check with others to answer any questions she had, Ledford asked and continued to ask Smith on repeated occasions about when he would be returning to work?

44. `In her communications with Smith while he was on leave, Ledford made unwarranted and critical references to Smith's absence and to the fact of his absence.

45. During at least one conversation with Smith while he was on leave, Ledford indicated that his absence from his colleagues at work was a problem. She said "they need to see you working."

46. Ledford's comments indicated to Smith that his absence from work was

being held against him and Smith felt pressure to return to work sooner than the end of the approved leave period he was entitled to take.

47. Fearing that displeasure with his leave of absence would negatively impact his employment at GCSD, Smith returned to work on January 25, 2021 – several weeks earlier than planned and approved; and earlier than the full period of leave Smith needed and was eligible to take under the FMLA.

48. Smith then received a poor review in the 2020-2021 Principal Assessment signed by Assistant Superintendent Donna Ledford on 1/29/2021. This was Smith's first poor review in eight years with GCSD.

49. The 2020-2021 Principal Assessment rated Smith as "Needs Development" in one-fourth of the measured categories.

50. Smith had never before received a rating of "Needs Development" (i.e., less than "Proficient") in any category on a written assessment while employed at GCSD.

51. Smith had never before received a rating of "Needs Development" in his more than 18 years of work for the Georgia public school systems in Dougherty and Gwinnett counties.

52. Ledford took other actions within a short time after learning of Smith's

need for an extended leave, and while he was on leave, designed to create a paper trail of performance issues that did not previously exist and/or had not been previously noted.

53. On April 29, 2020, Smith was called into a meeting with Ledford, Superintendent Wilbanks, and others where Smith was informed that his employment/contract with GCSD would not be renewed.

54. Wilbanks referred to criticisms and issues that would not ordinarily have motivated an employer such as GCSD to terminate Smith and/or were not attributable to Smith and/or which had not been previously raised as a concern.

55. Wilbanks also referred to Smith's absence from work and at one point was critical of it, saying "you can't dial up leadership."

56. Smith was given a "non-renewal letter" dated April 30, 2021 indicating that Smith would not be re-employed for the 2021-22 year, thus terminating his employment with GCSD.

57. Smith was given the option to resign, which he did, and his last day of employment with GCSD was June 30, 2021.

58. Smith's contracted annual rate of pay during his final year of employment with GCSD was $113,670.86 (Daily Rate $462.08).

59. Smith's salary increased each and every year of his employment with GCSD.

60. Had Smith not been terminated, his salary as an employee of GCSD would have continued to increase over time.

61. As an employee of GCSD, Smith also received and was entitled to benefits and fringe benefits.

62. Smith has made diligent and appropriate efforts to obtain comparable employment since his termination from GCSD, but he remains unemployed.

63. As of January 6, 2021, Smith's lost wages, calculated at the rate he was last earning at GCSD, are at least $58,704.

64. Lost wages will continue to accrue so long as Smith remains unemployed.

65. As a result of his non-renewal / termination, Smith has also lost the economic value of the benefits and fringe benefits he received and would have continued to receive as an employee of GCSD.

## COUNT I
**(Violation of the Family Medical Leave Act - Interference)**

66. Smith was eligible for and entitled to benefits and protection under the

FMLA.

67. Smith had a serious medical condition.

68. GCSD is a covered entity/employer under the FMLA.

69. Smith's leave of absence beginning on November 20, 2020 was FMLA leave and it was subject to FMLA rules and compliance.

70. As noted above, Ledford badgered Smith about when he would be returning to work after a RTW date had already been established and approved, made unwarranted and critical references to Smith's absence while he was on leave which caused Smith to return to work sooner than planned out of fear, and took other actions that interfered with and prejudiced Smith's ability to exercise his rights and receive benefits under the FMLA.

71. Smith had a right not to be made to feel as if his job was in jeopardy for taking FMLA leave.

72. Ledford's actions deterred Smith from using his full leave entitlement.

73. As a result, Smith was denied the full benefit of the FMLA.

74. GCSD's actions in interfering with Smith's right to take leave under the FMLA were committed with reckless disregard for Smith's protected rights under the FMLA.

75. Smith is entitled to all damages and relief allowed by the FMLA and applicable law, including reinstatement; recovery of lost wages, bonuses, and benefits, including but not limited to 401k match and health benefits; front pay and benefits; liquidated damages; interest; and attorneys' fees and expenses.

76. Because of GCSD's actions, Smith is entitled to recover liquidated damages equal to the amount of lost wages, salary, employment benefits, bonuses, and other compensation denied or lost by reason of Defendants' actions, plus interest thereon at the prevailing rate.

## COUNT II
**(Violation of the Family Medical Leave Act – Retaliation)**

77. Plaintiff engaged in protected activity by exercising his rights under the FMLA by taking leave.

78. GCSD took adverse actions against Smith and ultimately terminated his employment in retaliation for Smith's invocation of and exercise of his rights under the FMLA.

79. GCSD's actions in retaliating against Smith violated the FMLA and were committed with reckless disregard for Smith's protected rights.

80. Plaintiff is entitled to all damages and relief allowed by the FMLA and

applicable law, including reinstatement; recovery of lost wages, bonuses, and benefits, including but not limited to 401k match and health benefits; front pay and benefits; liquidated damages; interest; and attorneys' fees and expenses.

81. Because of GCSD's actions, Plaintiff is entitled to recover liquidated damages equal to the amount of lost wages, salary, employment benefits, bonuses, and other compensation denied or lost by reason of Defendants' actions, plus interest thereon at the prevailing rate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff DEMANDS A TRIAL BY JURY and respectfully prays for the following relief:

(A) Declaratory judgment that GCSD's practices complained of herein violated Plaintiff's rights under the FMLA;

(B) Full back pay from June 30, 2020, taking into account all raises and other compensation to which Plaintiff would have been entitled but for Defendant's unlawful actions, and all associated benefits of employment;

(C) Front pay to compensate Plaintiff for future lost wages and benefits;

(D) Liquidated damages equal to the amount of lost wages, salary, employment benefits, bonuses, and other compensation denied or lost by reason of Defendants' actions;

(E) Reinstatement;

(F) An award of Plaintiff's reasonable attorney's fees and expenses;

(G) Further relief as the Court deems just and proper;

(H) That all costs of this action be taxed against Defendant

Respectfully submitted this 1st day of February, 2022

MOORMAN PIESCHEL, LLC

s/ Christopher G. Moorman
Christopher G. Moorman
Georgia Bar No. 521490
cgm@moormanpieschel.com
*Attorney for Plaintiff*

One Midtown Plaza
1360 Peachtree Street, N.E.
Suite 1205
Atlanta, Georgia 30309
o: (404) 898-1240
f: (404) 898-1241